1 | Thomas F. Kummer, Esq.
Nevada Bar No. 1200
2 | Shauna L. Welsh, Esq.
Nevada Bar No. 11320
3 | GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
4 | Suite 400 North
Las Vegas, Nevada 89169
5 | Telephone: (702) 792-3773
Facsimile: (702) 792-9002
6 | *Counsel for Plaintiff*

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TIFFINIE SMITHE,<br><br>                    Plaintiff,<br><br>v.<br><br><br>WORLD WIDE VAN LINES, LLC, a<br>Delaware limited liability corporation; ABLE<br>MOVING, INC., a foreign corporation;<br>TRACIE TERMAN, an individual,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND<br>INJUNCTIVE RELIEF**<br><br>(1)   Violation of Carmack Amendment<br>        under 49 U.S.C. § 14706<br><br>(2)   Breach of Contract<br><br>(3)   Negligent Misrepresentation<br><br>(4)   Intentional Misrepresentation<br><br>(5)   Negligent Hiring<br><br>(6)   Conversion<br><br>(7)   Punitive Damages |

For her complaint against Defendants, Plaintiff Tiffinie Smithe ("Smithe") complains and alleges as follows:

### NATURE OF ACTION

This is an action for violation of 49 U.S.C. § 14706, which is commonly referred to as the Carmack Amendment, with pendent state law claims for breach of contract, negligent misrepresentation, intentional misrepresentation, conversion, negligent hiring and punitive damages. Plaintiff seeks damages, attorneys' fees and costs.

LV 419,242,657v1 11-10-10

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

## JURISDICTION

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

2.      This Court has personal jurisdiction over Defendants based upon the following: (a) Defendants offer their moving and shipping services to residents of the State of Nevada; (b) Defendants operate web sites on the Internet that are accessible to residents of the State of Nevada; and (c) Defendants committed tortious acts that they knew or should have known would cause injury to Plaintiff in the State of Nevada.

3.      Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. § 1391(b) and (c).  Venue lies in the unofficial Southern Division of this Court.

## PARTIES

4.      Plaintiff Tiffinie Smithe is a resident of Las Vegas, Nevada.

5.      Upon information and belief, Defendant World Wide Van Lines, LLC ("World Wide") is a Delaware limited liability company.

6.      Upon information and belief, Defendant Able Moving, Inc. ("Able Moving"), is an Illinois corporation with its principle place of business in Chicago, Illinois.

7.      Upon information and belief, Defendant Tracie Terman ("Terman") is a resident of Chicago, Illinois and is an employee of Able Moving.

## ALLEGATIONS COMMON TO ALL COUNTS

8.      In the spring of 2010, Smithe, an aesthetician and makeup artist, made the decision to move from Indiana to Las Vegas, Nevada.

9.      On or about March 17, 2010, Smithe entered into a contract with World Wide to transport the contents of her one bedroom apartment to her new home in Las Vegas.  In addition to the furniture, clothing and personal items contained in her apartment, the belongings shipped by Smithe also included the equipment and supplies she used to make a living as an aesthetician and makeup artist.

10.     Smithe contacted the 1-800 number listed on World Wide's website and spoke with a representative named "David."   David informed Smithe that the average one bedroom apartment weighs approximately 1600 lbs and quoted her the corresponding shipping cost of $1,113.95.

11.     David indicated that upon picking up her belongings from her residence in Indiana, the truck drivers would take her items to a weigh station to determine the actual weight of the shipment.

12.     David informed Smithe that she could accompany the truck to the weigh station and be present for the weighing.

13.     David also informed Smithe that it should take no longer than 5 to 7 days to transport her belongings from Indiana to Las Vegas.

14.     Smithe agreed to the quoted price of approximately $1,113.95.   On or about April 26, 2010, Smithe paid World Wide a deposit of $213.95, with the remaining $900 balance due upon delivery.

15.     On or about May 12, 2010, at approximately 9:00 p.m., two men in an unmarked moving truck arrived at Smithe's apartment in Indiana to pick up her belongings.   Smithe naturally assumed the two men were World Wide employees.

16.     The two men placed numbered stickers on each of Smithe's boxes and furnishings and provided her with a bill of lading listing each numbered item.

17.     However, unbeknownst to Smithe, the drivers did not provide the required description of each item that corresponded to the numbered label.

18.     When Smithe indicated that she would like to follow the drivers to the weigh station to witness the weighing of her items, she was informed that her items would not be weighed at a nearby location.   Rather, Smithe was told that her items could be weighed at any point during the trip from Indiana to Las Vegas and that it was impossible for the drivers to know when or where her items would be weighed.

19.     Smithe was informed that she would be contacted by the drivers approximately one day after her items were picked up in order to advise her of an estimated date of when her items would be delivered.

LV 419,242,657v1 11-10-10

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

20.     Smithe never received any such call from the drivers.

21.     Two days after her items were picked up in Indiana, Smithe began calling World Wide to obtain more information on the expected delivery date.

22.     Again, Smithe spoke to David, who stated that he would transfer Smithe to "dispatch" so that she could obtain more information on when her things would be delivered to Las Vegas.

23.     After approximately six days of trying to reach someone in "dispatch," Smithe finally reached an individual named "Ingrid."

24.     At this point, Ingrid informed Smithe that her items weighed exactly 4,000 lbs, *2,400 lbs more* than the 1,600 lbs originally estimated and upon which Smithe was quoted $1,113.95 for shipping.  Ingrid told Smithe that the balance now due was $2,595.00.  In addition, Smithe was informed that, instead of the 5-7 days she was told it would take to deliver her items, it could take up to 30 days for her items to reach Las Vegas.

25.     On the morning of June 5, 2010, *twenty-six days* after her items were picked up from Indiana, Smithe received a voicemail message from the drivers of the moving van.

26.     The drivers identified themselves as employees of "Able Moving."  This was the first time that Smithe learned that World Wide was not the company that picked up her items and transported them from Indiana to Las Vegas.

27.     Several minutes later, Smithe received a second voicemail message from Terman, an Able Moving representative, who stated that the drivers had been attempting to contact her for several days and that if she did not immediately contact Able Moving, her items would be placed in a storage facility.

28.     Within five minutes of receiving Ms. Terman's voicemail message, Smithe called Ms. Terman back at the number provided in the voicemail message.

29.     Curiously, Terman informed Smithe that she was too late and her items had already been placed in a storage facility approximately 45 minutes outside of Las Vegas.  Smithe stated that she immediately returned Terman's phone call and requested that her items be delivered to her residence in Las Vegas as originally agreed.

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

LV 419,242,657v1 11-10-10

30.     Terman informed Smithe that she had forfeited delivery and now had to retrieve her items from the storage facility.

31.     Terman stated that Smithe would also be responsible for the storage fees, which at a minimum, would be $350.

32.     When Smithe requested the location of the storage facility, Terman informed her that she would not disclose the location of Smithe's belongings until Smithe wired the remaining $2,595 balance to Terman and paid the storage fees.

33.     Terman stated that upon receipt of the funds, she would mail Smithe a key to the storage unit with the location information.  Naturally, Smithe refused.

34.     After numerous attempts to obtain the location of her belongings, Smithe sought legal assistance.  On or about June 21, 2010, counsel for Smithe sent a demand letter to World Wide and Able Moving demanding that Smithe's items be immediately delivered to her in Las Vegas.

35.     Neither Able Moving or World Wide responded to this correspondence.

36.     On or about July 12, 2010, Smithe again spoke to Terman, who informed her that her belongings were not in a storage facility near Las Vegas as she originally thought, but were now located in a storage facility in Chicago, Illinois.

37.     Terman reiterated that she would only provide Smithe with the location of the storage facility and keys to the storage unit if Smithe met her on a specified street corner in Chicago with certified funds for the remaining balance and storage fees.

38.     Desperate to obtain her belongings, Smithe agreed.

39.     Smithe then made arrangements to travel from Las Vegas to Chicago.

40.     Prior to traveling to Chicago to meet Terman, Smithe contacted the Department of Transportation, who agreed to accompany her to the meeting with Terman.

41.     In July 2010, Smithe traveled to Chicago to meet with Terman along with two Department of Transportation commerce officers.  Upon meeting Terman, the officers confronted Terman at which time she disclosed the location of Smithe's belongings.

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

LV 419,242,657v1 11-10-10

42.     Smithe, Terman and the two commerce officers traveled to Extra Space Management, Inc., where Smithe was finally able to see her belongings for the first time since they were picked up in Indiana on May 12, 2010.

43.     Many of the boxes containing Smithe's items and that were sealed tight when she turned them over to the movers had been intentionally broken into and rummaged through.  Other boxes were either missing the items inside or were missing altogether.

44.     Numerous items that remained were severely damaged or destroyed.  For example, the furniture in the unit, including a futon, dresser and drawers, and numerous storage bins were severely damaged and broken and it appeared as if someone took a crow bar to the drawers.

45.     As Terman stood by and watched Smithe go through what remained of her belongings, she laughed and sneered at Smithe and yelled profanity at her.  Upon leaving the storage facility, Terman sarcastically yelled "good luck getting anything out of me."

46.     Upon information and belief, Able Moving never brought Smithe's items to Las Vegas, but instead drove them directly to Chicago, where Terman and her associates rummaged through each box and drawer and took what they wanted.

47.     Then, with the intent to extort more than double the amount of moving fees from Smithe, Terman and Able Moving held the location of the items and the items themselves hostage.

48.     As a result of Defendants' actions, Smithe has sustained a total loss of her personal belongings and aesthetician equipment and has suffered severe mental anguish and distress.

### FIRST CLAIM FOR RELIEF
(Violation of 49 U.S.C. § 14701 *et seq.* – Against Able Moving)

49.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

50.     On or about May 12, 2010, Smithe delivered the contents of her one bedroom apartment and the equipment and supplies she uses as an aesthetician and make-up artist to Able Moving in good condition.

51.     The contents delivered to Able Moving were never delivered to Smithe in Las Vegas, Nevada as required under the bill of lading.

LV 419,242,657v1 11-10-10

52.     When Smithe finally learned of the exact location of her items, she was told that they were now in a storage facility located in Chicago, Illinois.

53.     Upon information and belief, Smithe's belongings were never brought to Las Vegas, but were instead transported directly to the storage facility in Chicago, Illinois where they were held by Able Moving for ransom.

54.     When Smithe finally obtained her items, what was remaining had been severely damaged and destroyed. Many items were completely missing and have never been returned to Smithe.

55.     As a direct and proximate result of such conduct, Plaintiff has suffered a total loss of her belongings, for a total amount to be determined at the time of trial.

56.     Able Moving's actions have caused Smithe to retain services of counsel and Smithe is entitled to an award of reasonable attorneys fees and costs incurred herein.

### SECOND CLAIM FOR RELIEF
(Breach of Contract – Against World Wide)

57.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

58.     Smithe and World Wide entered into a valid and existing contract whereby World Wide agreed to ship the contents of Smithe's one bedroom apartment from her apartment in Indiana to her new residence in Las Vegas, Nevada.

59.     Smithe performed all of her obligations under the agreement.

60.     World Wide breached its obligations under the agreement by failing to deliver the items to Smithe in Las Vegas as agreed.

61.     As a direct and proximate result of such conduct, Plaintiff has suffered a total loss of her belongings, for a total amount to be determined at the time of trial.

62.     World Wide's actions have caused Smithe to retain services of counsel and Smithe is entitled to an award of reasonable attorneys fees and costs incurred herein.

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

LV 419,242,657v1 11-10-10

**THIRD CLAIM FOR RELIEF**
(Negligent Misrepresentation – Against World Wide)

63.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

64.     World Wide, during the course of the negotiations and communications with Smithe leading up to her decision to utilize World Wide's services to ship her belongings from Indiana to Las Vegas, and in which World Wide had a pecuniary interest, failed to exercise reasonable care and competence in obtaining or communication information to Smithe regarding (i) the total weight of her items, (ii) her ability to be present for the weighing of her items, (iii) the total cost to ship her items to Las Vegas, (iv) the identify of the company that would be transporting her belongings to Las Vegas, and (v) the estimated time that it would take to transport her things from Indiana to Las Vegas.

65.     Smithe justifiably relied on these representations in making her decision to utilize World Wide to ship her belongings to Las Vegas.

66.     As a direct and proximate result of such conduct, Plaintiff has suffered and will continue to suffer monetary loss, including economic and consequential damages, for a total amount to be determined at the time of trial.

67.     World Wide's actions have caused Smithe to retain services of counsel and Smithe is entitled to an award of reasonable attorneys fees and costs incurred herein.

**FOURTH CLAIM FOR RELIEF**
(Intentional Misrepresentation – Against World Wide)

68.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

69.     World Wide made numerous false representations to Smithe, including but not limited to, quoting Smithe the price of $1,113.95 to ship her items based on the average weight of a one bedroom apartment of 1,600 lbs., informing Smithe that she could be present for the weighing of her items, telling Smithe that it would take only 5-7 days for her items to be transported from

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

LV 419,242,657v1 11-10-10

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

1    Indiana to Las Vegas, and telling Smithe that her items would be delivered directly to her new

2    residence in Las Vegas.

3        70.    At the time these representations were made, World Wide knew or believed that

4    these representations were false.

5        71.    Based upon these misrepresentations, World Wide intended for Smithe to engage

6    World Wide to transport her belongings from Indiana to Las Vegas.

7        72.    As a direct and proximate result of World Wide's actions, Smithe has suffered, and

8    will continue to suffer damages, including but not limited to economic and consequential damages

9    in an amount to be determined at the time of trial.

10       73.    World Wide's actions have caused Smithe to retain services of counsel and Smithe is

11   entitled to an award of reasonable attorneys fees and costs incurred herein.

12                       **FIFTH CLAIM FOR RELIEF**

13                 (Negligent Hiring – Against World Wide)

14       74.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth

15   herein.

16       75.    In connection with its decision to utilize a third party company to transport Smithe's

17   belongings from Indiana to Las Vegas, World Wide owed Smithe a duty of care to conduct a

18   reasonable investigation and background check into Able Moving.

19       76.    World Wide breached that duty by hiring Able Moving even though it knew or

20   should have known that Able Moving has a history of poor business practices and has had

21   numerous consumer complaints filed against it.

22       77.    World Wide's breach caused Able Moving to take possession of Smithe's

23   belongings, after which Smithe's belongings were subsequently lost and/or destroyed as a result of

24   Able Moving's conduct.

25       78.    Additionally, World Wide's breach directly resulted in Able Moving taking

26   possession of Smithe's belongings and holding those items hostage for a grossly inflated amount

27   charge.

28

LV 419,242,657v1 11-10-10

79.     As a direct and proximate result of World Wide's negligent hiring of Able Moving, Smithe has suffered, and will continue to suffer damages, including but not limited to economic and consequential damages in an amount to be determined at the time of trial.

80.     World Wide's actions have caused Smithe to retain services of counsel and Smithe is entitled to an award of reasonable attorneys fees and costs incurred herein.

### SIXTH CLAIM FOR RELIEF
(Conversion – Against Terman)

81.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

82.     Terman wrongfully exercised a distinct act of dominion over Smithe's personal property when she rummaged through Smithe's belongings and stole numerous items prior to disclosing the whereabouts of the remaining items to Smithe.

83.     Terman's actions were in derogation, exclusion or defiance of Smithe's title or rights in her personal property.

84.     As a direct and proximate result of Terman's actions, Smithe has suffered, and will continue to suffer damages, including but not limited to economic and consequential damages in an amount to be determined at the time of trial.

85.     Terman's actions have caused Smithe to retain services of counsel and Smithe is entitled to an award of reasonable attorneys fees and costs incurred herein.

### SEVENTH CLAIM FOR RELIEF
(Punitive Damages – Against Terman)

86.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

87.     Terman's actions were undertaken with a malicious and fraudulent intent to deprive Smithe of her property in an attempt to extort exorbitant sums of money from Smithe.

88.     Terman's actions were undertaken with a conscious disregard for the consequences of such conduct and constitute a manifest disregard for Smithe's property, her mental and emotional well-being and her ability to obtain work and carry on in her profession.

LV 419,242,657v1 11-10-10

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

89.     Terman's actions are so egregious as to justify an assessment of punitive and exemplary damages pursuant to N.R.S. § 42.005.

90.     Terman's actions have caused Smithe to retain services of counsel and Smithe is entitled to an award of reasonable attorneys fees and costs incurred herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

A.      An award of compensatory, consequential, statutory, and punitive damages to Plaintiff in an amount to be determined at trial;

B.      An award of interest, costs and attorneys' fees incurred by Plaintiff in prosecuting this action; and

C.      All other relief to which Plaintiff is entitled.

DATED:  November 29th, 2010.

GREENBERG TRAURIG, LLP

Thomas F. Kummer (Bar No. 1200)
Shauna L. Welsh (Bar No. 11320)
3773 Howard Hughes Parkway, Suite 400 N
Las Vegas, Nevada 89169
Counsel for Plaintiff

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

LV 419,242,657v1 11-10-10